HUNTON ANDREWS KURTH LLP
M. BRETT BURNS (State Bar No. 256965)
Email: mbrettburns@HuntonAK.com
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701

Attorneys for Defendant
PEET'S COFFEE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>v.<br><br>PEET'S COFFEE, INC., a Virginia Corporation,<br><br>    Defendant. | CASE NO. 3:21-CV-07698-VC<br><br>**DEFENDANT PEET'S COFFEE, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES AND SANCTIONS**<br><br>Date: August 18, 2022<br>Time: 9:30 a.m.<br>Judge: Hon. Vince Chhabria<br><br>Complaint Filed: September 30, 2021 |

## I. INTRODUCTION

This Court previously found "there is little doubt that [Plaintiff] had no intention of returning to [Defendant's SoMA coffee shop] when he filed his lawsuit, and there is good reason to think that he lied under oath about this issue (and perhaps others) at the evidentiary hearing." June 22, 2022 Order Granting Motion to Dismiss at 2, Dkt. No. 48. In its Motion, Defendant established Plaintiff repeatedly lied under oath, filed a frivolous lawsuit, continued to litigate after it became clear that the claims were groundless and lacking in foundation, and engaged in sanctionable misconduct. *See* Def's Mot. at 3-8. Fees and sanctions should now be awarded.

In his Opposition, Plaintiff does not deny he lied in his declaration, at his deposition, and at the evidentiary hearing about multiple issues, including, without limitation, (1) the reason for his September 2, 2021 trip to San Francisco, (2) allegations that he sought to purchase food, drink, and goods from thirty-four businesses during a "two-hour span" during his day trip to San Francisco, and (3) allegations that he intended to return to Defendant's SoMA coffee shop (and the other thirty-three businesses he sued following his trip to San Francisco) when he filed this lawsuit. His silence is deafening. It is obvious that his entire lawsuit is built on a series of lies that neither he nor his own attorneys credibly attempt to defend. This is sanctionable misconduct.[1]

Rather than seeking to defend what he and his counsel actually said and did over the past nine months of litigation, Plaintiff's principal opposition argument is that he merely litigated and lost a run-of-the-mill "tester" case, and "simply losing" does not warrant an award of attorney's fees or sanctions. In support of this argument, Plaintiff doubles down on his discredited evidentiary hearing

---

[1] Plaintiff's misrepresentations to the Northern District of California are a pattern. Judge Alsup and Judge Corley previously found Plaintiff's testimony was not credible, and Judge Corley and Judge Gonzales Rogers previously found Plaintiff had no plan to return to the businesses he sued when he filed other lawsuits. *See* Def's Mot. at 6-7 (listing cases and discussing findings). Moreover, at least fifteen other courts that have dismissed Plaintiff's lawsuits for lack of standing, many of which turned on adverse credibility findings. *See* Def's Mot. at 7 (listing cases). These decisions support the allegations made by the District Attorneys of San Francisco County and Los Angeles County in Docket No. 28, Complaint, in *People of the State of California v. Potter Handy LLP*, No. CGC-22599079 (filed April 11, 2022) (alleging "***in each case the firm's attorneys file, they intentionally include and adopt false allegations that the Serial Filer personally encountered a barrier at the business in question, was deterred or prevented from accessing the business because of it, and intends to return to the business after the violation is cured***," and this "deceitful, unlawful conduct is particularly blatant and indisputable with respect to Mr. Whitaker").

testimony that the true reason he visited thirty-four San Francisco businesses on September 2, 2021 was not to purchase items as a customer (as he repeatedly, emphatically, testified at deposition), but rather to assess legal compliance as a "tester" for his "advocacy" business.[2] But, again, Plaintiff already admitted on cross-examination that he testified at deposition that he visited thirty-four San Francisco businesses on September 2, 2022 "to dine" and "to shop," and never once claimed he did so as a "tester" for his "advocacy."[3] Plaintiff's opposition argument is thus predicated on another lie.

Moreover, Plaintiff's argument that he "simply lost" ignores the undisputed facts showing he (1) vexatiously prolonged this lawsuit by refusing to acknowledge that he lacked standing to sue and that the alleged patio table violation he complained about had been remediated, (2) opposed motions to dismiss due to lack of standing and mootness in multiple filings with the Court (Dkt Nos. 14 and 26), (3) sought to reverse course by attempting to deem the lawsuit moot thirty minutes before he was scheduled to testify at an evidentiary hearing (Dkt No. 38), and (4) engaged in blatant discovery misconduct, in violation of a Court Order, which was never remediated. Dkt Nos. 42 and 45. This is not "simply losing," it is frivolous, vexatious, and sanctionable misconduct. Def's Mot. at 2-5.

An award of reasonable attorney's fees is thus warranted not because Plaintiff "simply lost," but because his case was predicated on multiple false allegations and was frivolous from the outset, and because Plaintiff continued to litigate his claims after it became clear the claims were groundless and lacking in foundation. And an award of monetary sanctions is warranted because Plaintiff and Plaintiff's counsel repeatedly engaged in sanctionable conduct, including vexatiously prolonging the

---

[2] Plaintiff's Counsel recently characterized Plaintiff's "tester" activities as his "business," conceding that seeking statutory damages under the Unruh Act as "it's how [he] makes money, yes." *Whitaker v. Salah R. Salah*, No. 4:21-cv-09548-YGR, Motions Hearing Transcript at 56:7-25 (June 16, 2022), Exhibit A to the Burns Decl.

[3] Plaintiff no doubt testified about his alleged intention "to dine" or "to shop" thirty-four times at deposition because he was seeking to establish *bona fide* customer status in order to support his demands for statutory damages under the Unruh Civil Rights Act when he sued these thirty-four businesses. *See Arroyo v. Golbahar*, No. 218CV00594FLAJEMX, 2022 WL 19199, at *4 (C.D. Cal. Jan. 3, 2022) ("a plaintiff suing under the Unruh Act must allege – and ultimately prove – a *bona fide* intent to avail himself of the defendant's services to have statutory standing."). Had Plaintiff taken the position in his trove of lawsuits that he visited these businesses as a tester, not as a *bona fide* customer, he would have had no ability to claim damages, and could not have settled Unruh claims against these businesses for $4,000 per lawsuit.

lawsuit, violating discovery orders, and engaging in discovery misconduct.

## II. ARGUMENT

### A. Plaintiff's Repeated Lies Permeate Every Part Of This Case.

Plaintiff's testified the purpose of his September 2, 2021 trip to San Francisco's SoMA neighborhood was to "canvass" for "a nice area to move," as he was "considering" relocating to the Bay Area. Defendant established this was false. Plaintiff had never been to SoMA before or since, had no family or friends there, had no business reason to visit, admitted to doing none of the things a reasonable person would do if he truly sought to relocate to SoMA, admitted that when he moved a month after his trip, it was to a new apartment in the Brentwood neighborhood of Los Angeles in October 2021, not SoMA, and admitted he someday hoped to move to Sacramento, not SoMA. *See* Def's Mot. at 1-3.

Plaintiff testified that, while passing by Defendant's SoMA coffee shop, he "considered" buying a drink, but decided against it, allegedly due to observing an allegedly inaccessible patio table that allegedly deterred him from purchasing and consuming a hot chocolate drink. Defendant established this was false. Plaintiff never left the sidewalk, never attempted to make a purchase, never asked Defendant whether it had an accessible table he could use, and, in any event, did not need a table to purchase or consume the drink he "considered" buying. *See* Def's Mot. at 1-3.[4]

Plaintiff testified that, on September 2, 2021, over a "two-hour span," he visited thirty-four San Francisco businesses "to dine" or "to shop," but decided against eating or making purchases at the vast majority of them. Defendant established this was false. Setting aside the obvious point that

---

[4] Worse, despite admitting he "probably could have" positioned his wheelchair parallel to one of the patio tables, sat a drink on the table adjacent to him, and enjoyed the drink (which negates his argument that the patio table was a barrier to purchasing or consuming the drink), Plaintiff also lied about why he did not do this. Plaintiff testified "*So being at a parallel angle is very difficult for me to have to lean over, grab my drink with two hands, because I have no finger dexterity whatsoever, and at that point I'm not enjoying [my drink].*" *See* May 31, 2022 Evidentiary Hearing Transcript at 23:1-11, Exhibit B to the Burns Decl. But Plaintiff can position his wheelchair parallel to a patio table, sit a drink on the table adjacent to him, and consume his drink. *See* Photograph of Plaintiff and Plaintiff's Counsel, Exhibit C to the Burns Decl. And contrary to Plaintiff's testimony that he has "*no finger dexterity whatsoever*," Plaintiff has posted numerous music videos to Youtube showing him holding and smoking cigars, holding and smoking cigarettes, holding drumsticks, counting dollar bills, drinking from shot glasses, and holding liquor bottles, among other things, all of which demonstrate finger dexterity. *See* Collected Youtube Music Videos, Exhibit D to the Burns Decl.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

no one changes their mind about where to eat twenty-plus times in two hours, visiting thirty-four businesses "to dine" and "to shop" over a "two-hour span" would have meant spending three minutes and thirty-two seconds per business, covering time to dine, to shop, travel between nearby businesses using his wheelchair, and rental car driving, parking, loading, and unloading across eight San Francisco neighborhoods (SoMA, Haight-Ashbury, Lower Haight, Inner Richmond, Outer Richmond, Hayes Valley, Presidio Heights, and Tenderloin). It is impossible for Plaintiff (or any person) to actually do these things in a "two-hour span," as he claims. *See* Def's Mot. at 1-3.

Plaintiff testified that he intended to return to Defendant's SoMA coffee shop (and the other businesses he sued following his September 2, 2021 trip) when he filed this lawsuit. Defendant established this was false. Plaintiff admitted at the evidentiary hearing that had no plan to return until April 2022, seven months after filing this case, when he and Plaintiff's Counsel belatedly devised a "strategic plan to meet and revisit [the 1,790] businesses" that he had sued. *See* Def's Mot. at 1-3.[5]

### B. Peet's Coffee Has Never Conceded Plaintiff's Claims Were Warranted.

Plaintiff misinterprets the introduction to Defendant's Motion to "concede the bona fides of Whitaker's claim" (Opp'n at 1), claiming it supports Plaintiff's "tester" arguments. Far from it. Defendant's Motion makes clear that Plaintiff's allegations were demonstrably false at the time he filed his Complaint. *See* Def's Motion at 1-3.

As a threshold matter, as discussed above, Plaintiff's argument that he visited Defendant's SoMA coffee shop as a "tester" is predicated on a discredited misrepresentation. *See* Section II(A), *supra*. Moreover, while Plaintiff relies on *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1101 (9th Cir. 2017) for the proposition that "motivation" is irrelevant because testers can have standing to sue, his argument that "tester status automatically confers standing under the ADA" is incorrect. "Simply being a 'tester' plaintiff does not eliminate basic standing principles – a disabled plaintiff may not sue a business for injunctive relief simply because an ADA violation exists." *Gomez v. Wunderlich*, No. 22-CV-00355-TSH, 2022 WL 2119120, at *4 (N.D. Cal. June 13,

---

[5] This conclusion is consistent with prior findings by Judge Corley and Judge Gonzales Rogers that Plaintiff had no plan to return to the businesses he sued when he filed other lawsuits. *See* Def's Mot. to Dismiss at 6-7 (listing cases and discussing findings).

2022). Rather, Plaintiff must "allege sufficient facts to show an intent to return or that a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." *Id.* And again, the facts in this case show that Plaintiff lied about both intending to return to Defendant's SoMA coffee shop and about being deterred. Def's Mot. at 1-3; Section II(A), *supra*.

### C.     Monetary Sanctions Are Warranted.

Plaintiff argues that, even though he lost this case, "it was founded on a cognizable claim for denial of equal access and recently re-approved basis for standing by the Ninth Circuit" which "has not been refuted and this court cited *zero* binding authority showing that Whitaker's claim was invalid *ab initio* based on that authority." Opp'n at 3. But as Defendant has explained multiple times, *CREEC* does not help Plaintiff, as the Ninth Circuit made clear that "*case-by-case determinations about whether a particular plaintiff's injury is imminent is well within the competency of the district courts.*" *CREEC*, 867 F.3d at 1100. Additionally, in *CREEC*, the Ninth Circuit cited with approval to *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-37 (11th Cir. 2013), acknowledging that courts may assess, within its discretion, "various factors in determining whether plaintiff suing under ADA Title III was likely to actually visit the supermarket, including prior visits, proximity of residence to store, plans for future visits, and status as an 'ADA tester who has filed many similar lawsuits.'" *CREEC*, 867 F.3d at 1100. Thus, the Court was well within its bounds to consider evidence establishing Plaintiff had no intent to return to Defendant's SoMA coffee shop, that the patio table was not a barrier to him purchasing or consuming a drink, and that Plaintiff was not deterred, each of which Defendant has proven.

In any event, Plaintiff's arguments as to what the Ninth Circuit requires to have standing to bring a Title III claim is a red herring, as the issue for purposes of sanctions or attorney's fees is not whether the Court got the law wrong – it did not – but whether Plaintiff made knowingly false and untrue allegations to satisfy the legal requirements. That's exactly what Plaintiff did. A lawsuit can be deemed frivolous if it lacks an arguable basis in law or fact. *Strojnik v. Portola Hotel, LLC*, No. 19-cv-07579-VKD, 2021 WL 4172921, at *1 (N.D. Cal. Sept. 14, 2021). And, the Ninth Circuit has further held that a lawsuit can be frivolous even if it has some measure of merit if a plaintiff makes "false factual assertions." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th

Cir. 2007). Thus, regardless what Plaintiff argues *CREEC* or *D'Lil* holds (and he is wrong about both), the Court found that Plaintiff was untruthful in his allegations attempting to meet that legal standard. On a motion for sanctions, the Courts must necessarily assess Plaintiff's credibility in determining whether he lacked a "reasonable or credible foundation to bring the suit or was aware the court would not have jurisdiction." *See Rutherford v. Evans Hotels, LLC*, No. 18-CV-435 JLS (MSB), 2021 WL 1945729, at *2 (S.D. Cal. May 14, 2021); *see also Garcia v. Alcocer*, No. 2:20-CV-08419-VAP (JEMx), 2022 WL 495051, at *4 (C.D. Cal. Jan. 19, 2022).

While Plaintiff contends that some courts disfavor serial ADA litigation and improperly base awards of attorney's fees against serial litigants (Opp'n at 8), Defendant has not asked the Court to award attorney's fees against Plaintiff on the basis that he is a serial litigant. The reason Defendant points to Plaintiff's testimony that he visited thirty-four San Francisco businesses over a "two-hour span" on September 2, 2022 in order "to dine" and "to shop" is not to prove he is a serial litigant, but to show he lied about what he did and why he did it. And it is not improper to consider these facts to assess whether Plaintiff's lawsuit was frivolous, unreasonable, without foundation, or in bad faith. *See Rutherford*, 2021 WL 1945729, at *3; *see also Garcia v. Alcocer*, 2022 WL 495051, at *3. The bottom line is that courts may take into consideration all "facts as they became known to the court, the litigation history of the plaintiff, and litigation tactics in the present matter to determine whether the plaintiff had a reasonable foundation to bring the suit or in some other way acted unreasonably or in bad faith." *Id.*; *Garcia*, 2022 WL 495051, at *3; *Strojnik*, 2021 WL 120899, at *4.

Defendant cited a number of recent decisions in ADA Title III cases, many involving Plaintiff and Plaintiff's Counsel, where courts awarded attorney's fees or sanctions to defendants, and Plaintiff simply ignores these decisions, even though they are essentially on all fours with the instant action. *See Garcia*, 2022 WL 495051, at *3; *Rutherford*, 2021 WL 1945729, at *6; *Whitaker v. 370 N. Canon Drive, LP*, No. CV-19-02918-CJC (GJSx), 2020 WL 6130139, at *1 (C.D. Cal. Oct. 8, 2020), aff'd, No. 20-56068, 2021 WL 4892168 (9th Cir. Oct. 20, 2021). These cases all involved serial Title III plaintiffs with substantial litigation history, contradictory factual records, and serious credibility questions. Plaintiff should fare no better than the plaintiffs in these other cases who were ordered to pay attorney's fees and sanctions.

### D. Defendant Is The "Prevailing Party" To This Litigation.

Plaintiff contends that "Defendant has not established that they are a prevailing party and as such are not entitled to seek attorney's fees." Opp'n at 6 (citing *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 961 (C.D. Cal. 2009)). However, since *Kittok*, the Ninth Circuit has "made clear that dismissing a case for lack of subject matter jurisdiction is 'a significant victory and permanently changes the legal relationship of the parties." *Amphastar Pharm. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 709 (9th Cir. 2017). Thus, "a defendant may be considered a prevailing party" when a case is dismissed "for lack of subject matter jurisdiction." *Id.* And, once a defendant has remedied the complained-of ADA Title III violations, the plaintiff's claims become moot and he loses standing, which means the court no longer has subject matter jurisdiction over the ADA claim. *Johnson v. Mo's TBJ Campbell LP*, No. 5:21-CV-01621-EJD, 2021 WL 4846855, at *3 (N.D. Cal. Oct. 18, 2021); *Grove v. De La Cruz*, 407 F. Supp.2d 1126, 1130-31 (C.D. Cal. 2005). As that is exactly what happened here, Defendant should be deemed the prevailing party.

Moreover, even though Plaintiff's claims were moot, a fact Plaintiff ultimately concedes, the Court also stated, based on facts adduced at an evidentiary hearing, that "there is little doubt that Whitaker had no intention of returning to the shop when he filed his lawsuit, and there is good reason to think that he lied under oath" about this issue and others. June 22, 2022 Order Granting Motion to Dismiss at 2, Dkt. No. 48. Thus, there is little doubt that Plaintiff also lacked standing to sue. And courts regularly award attorney's fees to a defendant when a plaintiff's Title III claim is dismissed for lack of standing to sue (or any other instance where subject-matter jurisdiction is deemed lacking). *See Garcia v. Alcocer*, No. 2:20-CV-08419-VAP (JEMx), 2022 WL 495051, at *4 (C.D. Cal. Jan. 19, 2022) (where "Plaintiff knew or should have known that he lacked standing in this case," court found "Plaintiff's bases for filing this lawsuit were frivolous, unreasonable, and groundless"); *Strojnik v. Portola Hotel, LLC*, No. 19-cv-07579-VKD, 2021 WL 4172921, at *2 (N.D. Cal. Sept. 14, 2021); *Rutherford v. Evans Hotels, LLC*, No. 18-cv-435 JLS (MSB), 2021 WL 1945729, at *2-3 (S.D. Cal. May 14, 2021); *Strojnik v. 1017 Coronado, Inc.*, No. 19-cv-02210-BAS-MSB, 2021 WL 120899, at *4 (S.D. Cal. Jan. 13, 2021) ("The fact remains that [the plaintiff] files lawsuits with broad, non-specific allegations that he knows will be dismissed for lack of standing.

This conduct is clearly frivolous, unreasonable, and groundless."). For these reasons, Defendant should be deemed the prevailing party.

### E. Regardless Of Attorney's Fees, Sanctions Are Plainly Justified.

Plaintiff contends Defendant's request for sanctions, as opposed to a motion for fees, is nothing more than an impermissible end-run around the *Christiansburg* standard, complaining "*Christiansburg* would be a useless protection if a Defendant could simply plead for his fees in another fashion and reach a contrary result." Opp'n at 6-7. This is absurd. *Christiansburg* applies to awards of attorney's fees, not sanctions.

Moreover, the original incarnation of 28 U.S.C § 1927 was enacted by Congress in 1813, followed by another statute that "substantially re-enacted the earlier provision that allows lawyers who multiply legal proceedings to be taxed with the extra 'costs' they generate." The law, now codified as Section 1927, "has remained basically unchanged since 1853." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 759–60 (1980). Thus, this basis for awarding sanctions under Section 1927 was available to defendants long before the basis for awarding attorney's fees *Christiansburg* standard was created by the U.S. Supreme Court in 1978. And well before *Christiansburg*, the Supreme Court in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) explicitly recognized that courts have inherent power to assess attorney's fees as a sanction when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Seeking an award of sanctions under authority that pre-dates *Christiansburg* is not end-run around *Christiansburg*'s attorney's fees law.

### F. Plaintiff's Meet And Confer Objections Lack Merit.

Plaintiff argument that the Court should deny Defendant's motion for failure to meet and confer under the Court's Local Rules 37-4 and 54-5 lacks merit and should be rejected. Opp'n at 8-9. While meeting and conferring may be required on a motion for attorney's fees solely under Rule 54, Defendant's motion is also styled a motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent powers, and Plaintiff cites no authority containing meet and confer obligations for sanctions on these bases. Moreover, the Court granted Defendant leave to file the present motion. *See* June 22, 2022 Order Granting Motion to Dismiss at 1, Dkt. No. 48.

In any event, "[d]istrict courts within the Ninth Circuit have granted attorney's fees to [parties] despite a [party's] failure to comply with Local Rule 54-6 meet and confer requirement." *Yue v. Storage Tech. Corp.*, No. C07-05850 JW, 2008 WL 4185835, at *7 (N.D. Cal. Sept. 5, 2008). Courts will forego meet and confer obligations if they would be futile. *Id.* Courts have found that meeting and conferring is futile after "[t]aking into account plaintiffs' bad faith usage of judicial resources" and will excuse a moving party's "technical noncompliance with the meet and confer requirement" if and when appropriate. *Tapgerine, LLC v. 50Mango, Inc.*, No. C 16-06504 WHA, 2017 WL 1956874, at *3 (N.D. Cal. May 11, 2017). Such is the case here.

Defendant has documented (and the Court is aware of) Plaintiff's bad faith abuse of judicial resources; not just in this case, but in a multitude of copycat cases filed by Plaintiff and his counsel. This conclusion is further supported by cases recently decided by Judge Alsup, Judge Corley, and Judge Gonzales Rogers, who previously faulted Plaintiff's lack of credibility and found Plaintiff had no plan to return to the businesses he sued when he filed other lawsuits. *See* Def's Mot. to Dismiss at 6-7 (listing cases and discussing findings). Thus, while Defendant denies that it was required to meet and confer before filing the present motion, to the extent the Court concludes otherwise, Defendant requests that any such obligations be excused on the ground that they would have been futile.

**G.    Defendant Is Entitled To The Amount Of Fees And Sanctions It Seeks.**

Plaintiff does not question the reasonable hourly rates of defense counsel. Opp'n at 9. Rather, he suggests that Defendant "grossly exaggerated the amount of time spent on this matter" and that its failure to provide billing records is fatal to its motion. *Id.* Plaintiff is wrong. Defendant properly accounted for the work spent on this case and the billings for payment, which to date exceed $50,000 in attorney's fees. *See* Def's Mot. at 14-15 and Burns Decl., filed previously.

Moreover, courts recognize "a party may prevail on a motion for attorneys' fees without submitting billing records." *Int'l Petro. Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*, No. 19-CV-03004-YGR, 2020 WL 789567, at *3 (N.D. Cal. Feb. 18, 2020). That is particularly true where, as here, the moving party is not seeking its full amount of attorney's fees. Moreover, billing records are not a predicate for awarding sanctions. This noted, to the extent the Court requires billing records, even though Defendant is seeking less than all of its attorney's fees, Defendant requests that

it be permitted to supply those records to the Court through a supplemental brief. *See id.*; *see also Fresh Packing Corp. v. Guicho*, No. 15-CV-01551-LHK, 2016 WL 1718286, at *2 (N.D. Cal. Apr. 29, 2016); *Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*, No. C 07-5664 CW, 2014 WL 576157, at *3 (N.D. Cal. Feb. 12, 2014).

### H. Defendant Is Entitled To Costs.

Plaintiff argues that Defendant is not entitled to the costs it seeks in its contemporaneously-filed Bill of Costs because they are "only awardable under the same provision as attorney fees and thus susceptible to the same *Christiansburg* analysis." Opp'n at 10. Plaintiff is wrong. The proper procedural vehicle for challenging costs is an objection to bill of costs, where Plaintiff files "any specific objections to any item of cost claimed in the bill, succinctly setting forth the grounds of each objection." Local Rule 54-2(a). Plaintiff has not done that here.

Moreover, contrary to Plaintiff's arguments, an award of costs under Fed. R. Civ. P. 54 is not governed by *Christiansburg*. Rule 54(d)(1) provides that prevailing parties are presumptively entitled to costs, period. Fed. R. Civ. P. 54(d)(1); *Marx v. General Revenue Corp.*, 568 U.S. 371, 377 (2013). To the extent that Plaintiff claims the Ninth Circuit's decision in *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182 (9th Cir. 2001) requires a showing of frivolousness for an award of costs, it is fundamentally inconsistent with the later-issued *Marx* decision by the Supreme Court. *See T.P. v. Walt Disney Parks & Resorts U.S. Inc.*, No. CV 15-05346-CJC(EX), 2022 WL 1054935, at *1–2 (C.D. Cal. Mar. 3, 2022) ("The Court must therefore follow *Marx* over *Brown*. In so doing, the Court finds that the Clerk's decision to follow Rule 54(d)(1)'s "venerable presumption" and thereby tax costs against Plaintiffs was not in error.").

## III. CONCLUSION

Based on the evidence and authorities presented, Defendant asks the Court to make an award of at least $35,000 in attorney's fees, or, alternatively, sanctions, jointly and severally against Plaintiff and Plaintiff's Counsel, who filed a frivolous, unreasonable, and groundless lawsuit, who advanced frivolous, unreasonable, and groundless litigating positions, and who engaged in multiple instances of sanctionable misconduct, all to the detriment of Defendant. It is well within the Court's discretion to award attorney's fees and sanctions under these circumstances.

| | |
|---|---|
| DATED: July 27, 2022 | HUNTON ANDREWS KURTH LLP<br><br>By: /s/ *M. Brett Burns*<br>M. BRETT BURNS<br>Attorneys for Defendant<br>PEET'S COFFEE, INC. |