HUNTON ANDREWS KURTH LLP
M. BRETT BURNS (State Bar No. 256965)
Email: mbrettburns@HuntonAK.com
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701

Attorneys for Defendant
PEET'S COFFEE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PEET'S COFFEE, INC., a Virginia Corporation,<br><br>　　　　Defendant. | CASE NO. 3:21-CV-07698-VC<br><br>**DEFENDANT PEET'S COFFEE, INC.'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS**<br><br>Judge: Hon. Vince Chhabria<br><br>Complaint Filed: September 30, 2021 |

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

## I. INTRODUCTION

Pursuant to the Court's August 18, 2022 Order, Docket No. 70, Defendant Peet's Coffee, Inc. files this supplemental brief in further support of its motion for sanctions to identify record evidence showing where Defendant contends Plaintiff lied to Defendant and the Court.

## II. ARGUMENT

**A.  Plaintiff Lied About Visiting The Peet's Coffee San Francisco SoMA Coffee Shop.**

Plaintiff claims he visited the Peet's Coffee San Francisco SoMA coffee shop on September 2, 2022. *See* Plaintiff's Complaint (Dkt. No. 1) at ¶ 8 ("Plaintiff went to Peet's Coffee in September 2021 . . . ."); Declaration of Plaintiff in Opposition to Defendant's Motion to Dismiss (Dkt. 14-1) at ¶ 1; Deposition of Brian Whitaker (Pl's Depo.) 10:1-11 (Exhibit A to Declaration of M. Brett Burns in Support of Defendant's Supplemental Brief in Further Support of its Motion for Sanctions); Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss at p. 6 (Dkt. No. 26) ("In his deposition, Mr. Whitaker explained that another reason for his visit was to shop, dine, and get to know the area, which he did.").

Defendant contends this was a lie, and the Court should make a finding that this was a lie for the following independent reasons:

First, there are no receipts corroborating that Plaintiff visited the Peet's Coffee SoMA coffee shop on September 2, 2021. Pl's Depo. 25:1-14 (Plaintiff did not make any purchases at Peet's Coffee on his purported September 2, 2021 visit); May 31, 2022 Evidentiary Hearing Transcript ("Hearing Tr.") 23:12-20 (Exhibit B to Burns Decl. filed herewith).

Second, there is no witness testimony corroborating that Plaintiff visited the Peet's Coffee SoMA coffee shop on September 2, 2021. Plaintiff admits he never entered the coffee shop, and never spoke to a Peet's Coffee employee inside or outside of the coffee shop, so no one at Peet's Coffee can verify that he ever visited the coffee shop. Pl's Depo. 26:12-17, 26:22-27:1; Hearing Tr. 24:4-8. While Plaintiff claims his long-time friend Tyrus Payne accompanied him on the September 2, 2021 trip, Mr. Payne never testified or provided a written statement, and thus never corroborated that Plaintiff visited Peet's Coffee's SoMA coffee shop. And despite being requested in written discovery, and specifically being ordered to produce them, Plaintiff produced no documents showing

1

communications between Plaintiff and Mr. Payne concerning Peet's Coffee or concerning their alleged September 2, 2021 visit to San Francisco (both of which could have shown that Plaintiff or Mr. Payne visited Peet's Coffee). *See infra*.

Third, Plaintiff produced photographs in his possession of the outside coffee tables at the Peet's Coffee SoMA coffee shop, but the photographs are not time-stamped, Plaintiff is not visible in any of the photos, and most of the photos were admittedly taken by an unidentified consultant on September 14, 2021 – almost two weeks after Plaintiff claims to have visited Peet's Coffee. *See* Pl's Depo. 29:8-11; Pl's Responses To Defendant's Requests for Production Nos. 11-14 (attached as Exhibit C to Burns Decl. filed herewith). Accordingly, they do not corroborate that Plaintiff visited the Peet's Coffee SoMA coffee shop on September 2, 2022.

Fourth, despite being requested in discovery, and being ordered by the Court to produce them, Plaintiff did not produce any documents corroborating that he visited the SoMA neighborhood of San Francisco on September 2, 2021. Plaintiff produced no receipts from the rental car company from which he claims to have rented a car to drive from a still-unidentified airport to San Francisco's SoMA neighborhood, no parking receipts showing he parked the rental car in San Francisco's SoMA neighborhood or anywhere near Peet's Coffee that day, no documents showing he visited other businesses in SoMA that day (including any of the other SoMA businesses he sued based on alleged visits that same day that were located near Peet's Coffee), and no receipts from any other businesses in SoMA that day. *See* Pl's Responses To Defendant's Requests for Production Nos. 2-9, 11, 15.[1]

Fifth, Plaintiff incredibly claims he visited 34 different restaurants and shops spread over eight neighborhoods across San Francisco over a "two-hour span" on September 2, 2021. (Pl's

---

[1] Contrary to Plaintiff's Counsel's representations to the Court at the recent evidentiary hearing that "[n]umerous receipts" were provided to Defendant (*see* Aug. 18, 2022 Transcript of Proceedings at 37:4-13) (attached as Exhibit D to Burns Decl. herewith), the only receipts Plaintiff produced in response to Defendant's requests for production were (1) a receipt purporting to show a the purchase of a one-way ticket from San Francisco to Los Angeles on September 2, 2022 (which merely shows that the one-way ticket was purchased, not that the trip was taken), and (2) a receipt purporting to show a $500 payment to Mr. Payne which merely shows that Plaintiff paid Mr. Payne, not that the trip was taken). *See* Def's Notice of Compliance With Court's August 18, 2022 Order (Dkt. No. 74), at Attachments 1 and 2. Plaintiff produced no other documents, and continues to withhold producing additional documents within his possession, custody, and control despite a Court Order to produce them months ago. *See infra.*

Depo. 35:12-36:9; 36:11-37:4; 37:7-38:6; 39:5-40:1; 40:2-41:1; 42:18-43:17; 43:18-44:15; 47:12-48:2; 48:3-49:2; 49:3-23; 49:24-50:20; 50:21-51:20; 51:21-52:18; 52:19-53:20; 53:21-54:19; 54:20-55:16; 55:17-56:17; 56:18-57:24; 57:25-58:18; 58:19-59:16; 59:17-60:12; 60:13-61:9; 61:10-62:6; 62:7-63:9; 63:17-64:12; 64:13-65:8; 65:9-66:7; 67:11-22; 68:11-16); *see also* Def's Renewed Mot. to Dismiss at pp. 10-12 (Dkt. No. 24). This cannot true, as it is both physically and mathematically impossible for Plaintiff to have physically driven to, parked, and visited 34 restaurants and shops spanning eight different San Francisco neighborhoods in a "two-hour span," several from which he claims to have purchased food, drink, goods, and services (which would have taken additional time), and all of which he claims to have taken photographs (which would have taken even more time). Moreover, Plaintiff produced no receipts or photographs of the other 33 businesses he allegedly visited in September 2, 2021, violating a Court Order requiring him to do so. *See infra.*[2] As Plaintiff cannot physically and mathematically have visited the 34 businesses he claimed to have visited, made purchases from, and photographed during a two-hour day trip, and as Plaintiff has violated a Court Order requiring him to produce documents that would have been relevant to this issue, the Court can and should conclude that Plaintiff more likely than not lied about visiting some or all of the 34 businesses that day, including the Peet's Coffee SoMA coffee shop.

Sixth, Plaintiff's discovery misconduct, including his continuing violation of a Court Order to produce documents that speak to whether he visited Peet's Coffee or the other 33 San Francisco businesses he claims to have visited on September 2, 2021, supports a factual finding that Plaintiff more likely than not lied about visiting the Peet's Coffee San Francisco SoMA coffee shop on September 2, 2021. *See infra.*

Seventh, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about visiting the Peet's Coffee San Francisco SoMA coffee shop on September 2, 2021.

---

[2] *See* Complaint in *People v. Potter & Handy LLP*, ¶¶ 6-7 ("it is literally impossible for Potter Handy's Serial Filer clients, at least some of whom are wheelchair-bound, to repeatedly travel to all of the thousands of businesses they sue, especially those that are located hundreds of miles from where they live").

3

DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

**B.     Plaintiff Lied About Why He Claims To Have Visited San Francisco On September 2, 2021 – It Was Not To "Canvass The Area" To Look For "Potential Residency."**

Plaintiff claims the reason he visited San Francisco on September 2, 2021 was to "canvass the area" to look for "potential" residency because of his alleged "intent to move" to SoMA, San Francisco, the Bay Area, and Northern California. Pl's Depo. 14:11-15:8; Hearing Tr. 19:1-8.[3]

Defendant contends this was a lie, and the Court should make a finding that this was a lie for the following independent reasons:

First, Plaintiff did not do anything a reasonable person would do if he was truly "canvassing the area" because he was intending to move there. Plaintiff testified he spent his time looking for places "to dine" and "to shop," and admittedly did not, either on September 2, 2021 or any other time, meet with any real estate agents about moving to the SoMA neighborhood, San Francisco, or anywhere in the Bay Area, conduct online research about homes available in the SoMA neighborhood, attend or visit any open houses in the SOMA neighborhood, San Francisco, or the Bay Area, visit any rental properties in the SoMA neighborhood, San Francisco, or the Bay Area, or meet with any rental agents about renting in the SOMA neighborhood, San Francisco, or the Bay Area. Pl's Depo. 75:6-14, 75:15-19, 76:2-9, 76:10-16, 76:19-77:1.[4]

Second, the fact that Plaintiff moved in October 2021 (one month after his San Francisco trip) to a new apartment in Los Angeles, not SoMA, San Francisco, the Bay Area, or Northern California, undercuts his testimony that he was truly "canvassing" San Francisco because he was intending to move there. Pl's Depo. 11:12-12:1; Hearing Tr. 52:24-53:12.

---

[3] Plaintiff similarly testified that the reason he visited 14 businesses in Burlingame, California on October 25, 2021 that he later sued was to "canvass" the Burlingame area for "potential residency." *See* February 24, 2022 Deposition of Bryan Whitaker in *Whitaker v. Peet's Coffee, Inc.*, No. 4:21-CV-07055-WHA (N.D. Cal.) at 15:5-19 (testifying that on October 25, 2021, he was "in downtown Burlingame, in the area, just because I'm canvassing the area to look for potential residency," and noting "When I say canvassing, that includes seeing the amenities around the area, which entail downtown Burlingame.") (attached as Exhibit A to Burns Decl. (Dkt. No. 25-1) in Burlingame case).

[4] Plaintiff similarly admitted that despite claiming he was considering moving to Burlingame, California, he did not do anything a reasonable person would do if he was truly intending to move there. *See* Pl's Deposition (Burlingame) at 62:14-22, 62:23-63:2, 63:20-64:2, 64:3-9, 64:10-16 (attached as Exhibit A to Burns Decl. (Dkt. No. 25-1) in Burlingame case).

Third, the fact that the rental agreement for the Los Angeles apartment where Plaintiff now resides does not expire until October 2022 undercuts his testimony that he was truly "canvassing the area" in September 2021 because he was intending to move to San Francisco. (Pl's Depo. 11:12-12:4; Hearing Tr. 52:24-53:12.)

Fourth, the fact that Plaintiff admitted to Defendant at depositions on February 7, 2022 and February 24, 2022 that he had decided to move to Sacramento, not SoMA, San Francisco, or the Bay Area, when his Los Angeles Apartment lease expires in October 2022 undercuts his testimony that he was truly "canvassing the area" because he was intending to move to San Francisco.[5] (Pl. Depo. 73:5-74:8; Hearing Tr. 51:12-16, 53:23-54:6, 62:17-21.)[6]

Fifth, at the same time Plaintiff was representing to Defendant and this Court that he was "canvassing" to move to San Francisco, he represented to Judge Alsup that he was "canvassing" to move to Burlingame, which Judge Alsup found not credible. *See* Notice of Recent Decision, Dkt. No. 25, *Whitaker v. Peet's Coffee, Inc.*, No. 3:21-cv-07055-WHA (Mar. 31, 2022) (finding Plaintiff's testimony "that he was looking for places to live near Burlingame" not credible and his "vague, unsupported assertions" insufficient to support standing). At the same time, he represented

---

[5] As further example of the sheer number of lies Plaintiff has made about moving to the Bay Area, Defendant notes that even after admitting in two different depositions taken in February 2022 that he had decided to move to Sacramento, Plaintiff filed an amended complaint in a different Northern California case on March 3, 2022, pleading he was still "considering moving to the greater San Francisco Bay Area." *See Whitaker v. Tormrock, L.L.C.*, 3:21-cv-09550-JD (N.D. Cal.), First Amended Complaint at ¶ 8 (signed by Plaintiff's Counsel Christopher Seabock) (attached as Exhibit A to Request for Judicial Notice ("RJN") filed in support herewith).

[6] At the recent evidentiary hearing, Plaintiff's Counsel attempted to explain away Plaintiff's lies by representing to the Court "[Plaintiff] testified that he thinks Sacramento is considered the Bay Area in his mind" and that Plaintiff used "inconsistent" language that conflated "wanting to move to Northern California" with "wanting to move to the Bay Area" because "[h]e is not from the Bay" and "[h]e doesn't have that same geographic idiosyncrasy about caring about that distinction." *See* Evidentiary Hearing Transcript at 41:11-42:17. This argument is not credible, is not supported by any evidence, and should be rejected. Plaintiff has never testified here that he thinks "Sacramento is considered the Bay Area in his mind." To the contrary, at two different depositions taken by Peet's Coffee, Plaintiff repeatedly answered questions distinguishing between Sacramento and the Bay Area. *See* Pl's Dep. at 73:5-74:16 (distinguishing between Sacramento and the Bay Area); Pl's Depo. (Burlingame) at 60:21-62:4 (same), 62:23-63:19 (answering a question about the Bay Area by referencing Sausalito, Pacifica, San Jose, Palo Alto, and Burlingame, having already distinguished Sacramento from the Bay Area), 60:6-8 ("the range of places that I have been looking to reside span from San Jose all the way to San Francisco").

to Judge Corley that he was looking to move to Redwood City, which Judge Corley found not credible. *See Whitaker v. Slainte Bars LLC*, No. 21-CV-03750-JSC, 2022 WL 1426979, at *4 (N.D. Cal. May 5, 2022) (finding Plaintiff's "testimony that he was exploring neighborhoods [in Redwood City] to possibly relocate" were not credible, that he "travelled to Redwood City for the purpose of finding businesses to sue," and that Plaintiff produced no evidence of any "specific connection to Redwood City, any specific plan to return to Redwood City, or any specific reason to return to [the defendant's restaurant] in Redwood City").

Sixth, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about why he claims to have visited San Francisco on September 2, 2021, as it was not to "canvass the area" because he was intending to move to San Francisco, but rather to canvass the area because he was looking for lawsuits.[7]

## C. Plaintiff Lied About What He Allegedly Did During His September 2, 2021 Trip To San Francisco – Despite His Deposition Testimony, It Was Not "To Dine" Or "To Shop."

Plaintiff incredibly claims he visited 34 different restaurants and shops spread over eight neighborhoods across San Francisco over a "two-hour span" on September 2, 2021 in order "to dine" and "to shop." *See* Pl's Depo. 35:12-36:9; 36:11-37:4; 37:7-38:6; 39:5-40:1; 40:2-41:1; 42:18-43:17; 43:18-44:15; 47:12-48:2; 48:3-49:2; 49:3-23; 49:24-50:20; 50:21-51:20; 51:21-52:18; 52:19-53:20;

---

[7] At the recent evidentiary hearing, the Court asked Defendant to explain the consequence of this lie. Defendant's answer is that the consequence of this lie, as well as the separate lies that Plaintiff visited Peet's Coffee (and the 33 other businesses he sued), and that he did so "to dine" and "to shop," was that Peet's Coffee was prejudiced in by having to defend a lawsuit that was predicated on multiple lies. As discussed at the hearing, Plaintiff made and repeated these lies to not only provide a foundation for his ADA Title III claim, which requires him to establish Article III standing, but to preserve an Unruh Act claim (and thus preserve his right to seek $4,000 in statutory damages so he could share the settlement proceeds with his counsel). That is why he lied. The lies were particularly important to maintain his Unruh claim, since visiting a business as an alleged "tester" to audit for ADA violations is antithetical to visiting as a *bona fide* customer to purchase goods or services, and a viable Unruh claim requires Plaintiff to visit as a customer, not a tester. *See Arroyo v. Golbahar*, No. 2:18-cv-00594-FLA (JEMx), 2022 WL 19199, at *4 (C.D. Cal. Jan. 3, 2022) ("As *White, Thurston*, and *Reycraft* make clear, a plaintiff suing under the Unruh Act must allege—and ultimately prove—a bona fide intent to avail himself of the defendant's services to have statutory standing."); *Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal. App. 5th 299, 308 (2021) ("Thus, for Thurston to prevail on her Unruh Act claim against Omni, she had to show a 'bona fide intent' to book a room.").

6
DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1  53:21-54:19; 54:20-55:16; 55:17-56:17; 56:18-57:24; 57:25-58:18; 58:19-59:16; 59:17-60:12;
2  60:13-61:9; 61:10-62:6; 62:7-63:9; 63:17-64:12; 64:13-65:8; 65:9-66:7; 67:11-22; 68:11-16); *see
3  also* Defendant's Renewed Motion to Dismiss at pp. 10-12 (Dkt. No. 24).[8]

   Defendant contends this was a lie, and the Court should make a finding that this was a lie for the following independent reasons:

   First, as discussed above, this cannot true, as it is both physically and mathematically impossible for Plaintiff to have physically driven to, parked in, and visited 34 restaurants and shops spanning eight different San Francisco neighborhoods in a "two-hour span," several from which he claims to have purchased food, drink, goods, and services, and all of which he claims to have taken photographs, which would have taken even more time to do. Plaintiff also produced no receipts or photographs of the other 33 businesses he allegedly visited in September 2, 2021, thereby violating a Court Order requiring him to do so. *See infra*.[9] As Plaintiff cannot physically and mathematically have visited the 34 businesses he claimed to have visited, and has violated a Court Order requiring him to produce documents that would have been relevant to this issue, the Court can and should conclude that Plaintiff more likely than not did not visit at least some of the 34 businesses that day.

   Second, as a matter of common sense, Plaintiff did not visit 34 businesses in two hours "to dine" and "to shop." No person eats or shops that much, or changes their mind about eating and shopping that much.

   Third, Plaintiff changed his story at the May 31, 2022 evidentiary hearing when he testified

---

[8] As a further example of the sheer number of lies Plaintiff has made in this case, Defendant notes that one of the 34 businesses Plaintiff claims to have visited and then later sued following his two-hour day trip to San Francisco on September 2, 2021 was a *small dry cleaning business* called "Amazing Cleaners," located in the Lower Haight neighborhood in San Francisco. When asked why he would have visited would a dry cleaning business during a two-hour day trip to San Francisco, Plaintiff answered "*I can't recall*," stating he "*probably*" had something that needed to be cleaned, but could not remember what it was, and in any event could not recall whether he purchased any services or not. Pl's Depo. 62:7-63:9. This was a lie, as Plaintiff did not visit Amazing Cleaners to have something cleaned, or to purchase anything.

[9] *See* Complaint in *People v. Potter & Handy LLP*, ¶¶ 6-7 ("it is literally impossible for Potter Handy's Serial Filer clients, at least some of whom are wheelchair-bound, to repeatedly travel to all of the thousands of businesses they sue, especially those that are located hundreds of miles from where they live").

7

DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

that the real reason he visited these 34 restaurants and shops was not "to dine" or "to shop," but as a "tester" for his "advocacy." But that was not true, either, because he never mentioned "tester" or his "advocacy" once at his deposition. Hearing Tr. 24:25-25:17. And to further illustrate Plaintiff's lies about "testing" and "advocacy," Defendant points to Plaintiff's February 7, 2022 testimony at an evidentiary hearing in the *Whitaker v. Slainte Bar, LLC* case before Judge Corley. Asked whether he had previously testified that "advocacy" was his primary motivation for visiting businesses in the Bay Area, Plaintiff answered "*Never said that, no, sir*"; "*That's not my primary reason, no*"; "*I've never said I have an advocacy program, and I never said that I travel up to the Bay to sue businesses. I've never relayed that to you, sir*"; "*But I don't go to these places to look for places to sue. That's not my motivation.*" See Evidentiary Transcript in *Whitaker v. Slainte Bar, LLC*, No. 3:21-cv-03750-JSC (N.D. Cal. Feb. 7, 2022) at 33:10-23; 69:25-70:2; 70:8-9 (attached hereto as Exhibit B to RJN). Plaintiff further testified his "*primary reason*" for visiting Bay Area businesses at this time was because he was looking to "*relocate to the area and canvassing the different areas to see where [he] want[s] to go.*" *Id.* at 33:24-34:2. Again, that was a lie. *See supra*.

Fourth, as discussed previously, despite being requested in discovery, and specifically being ordered to produce them, Plaintiff produced no documents corroborating that he visited the SoMA neighborhood of San Francisco, on September 2, 2021. Plaintiff produced no receipts from the rental car company from which he claims to have rented a car to drive from the airport to the SoMA neighborhood, no parking receipts showing he parked the rental car in the SoMA neighborhood or anywhere near Peet's Coffee, no documents showing he visited any other businesses in SoMA that same day (including any of the other SoMA businesses he sued based on alleged visits that same day that were located near Peet's Coffee), and no receipts from any other businesses in SoMA that same day. *See* Pl's Responses To Defendant's Requests for Production Nos. 2-9, 11, 15 (attached as Exhibit B to Burns Decl. filed herewith).

Fifth, as discussed previously, there is no witness testimony corroborating that Plaintiff visited the Peet's Coffee SoMA coffee shop "to dine" (or to buy a hot chocolate drink) on September 2, 2021. Plaintiff admits he never entered the coffee shop, and never spoke to a Peet's Coffee employee inside or outside of the coffee shop, so no one at Peet's Coffee can verify that he ever

8
DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

visited the coffee shop. Pl's Depo. 26:12-17, 26:22-27:1; Hearing Tr. 24:4-8. While Plaintiff claims Mr. Payne accompanied him on the September 2, 2021 trip, Mr. Payne never corroborated that Plaintiff visited Peet's Coffee's SoMA coffee shop. And despite being requested in written discovery, and specifically being ordered to produce them, Plaintiff produced no documents showing communications between them concerning Peet's Coffee (which could have shown that Plaintiff or Mr. Payne visited Peet's Coffee) or the alleged September 2, 2021 visit to San Francisco. *See supra*.

Sixth, Plaintiff's discovery misconduct, including his still-continuing violation of a Court Order to produce documents that speak to whether Plaintiff visited Peet's Coffee, support a factual finding that Plaintiff more likely than not lied about visiting the Peet's Coffee San Francisco SoMA coffee shop "to dine" (or to buy a hot chocolate drink) on September 2, 2021. *See infra.*

Seventh, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about visiting the Peet's Coffee San Francisco SoMA coffee shop "to dine" (or to buy a hot chocolate drink) on September 2, 2021.

**D.    Plaintiff Lied About Intending To Purchase A Hot Chocolate Drink From The Peet's Coffee SoMA Coffee Shop.**

Plaintiff claims that, from the sidewalk while passing by the Peet's Coffee SoMA coffee shop, he "considered" purchasing a hot chocolate drink, but decided not to do so. Pl's Depo. 24:17-25:14; Hearing Tr. 21:8-20, 23:12-20.

First, assuming Plaintiff actually passed by Peet's Coffee (which Peet's Coffee denies, *see supra*), Defendant contends this was a lie, and the Court should make a factual finding that this was a lie, because there is no evidence that corroborates this claim. Moreover, it is common sense that a momentary thought made from the sidewalk outside of a business does not evidence that Plaintiff either intended to purchase a hot chocolate drink from Peet's Coffee or that Plaintiff was a customer of Peet's Coffee.

Second, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about intending to purchase a hot chocolate drink from the Peet's Coffee San Francisco SoMA coffee shop on September 2, 2021.

### E. Plaintiff Lied About Intending To Return To Peet's Coffee's SoMA Coffee Shop When He Filed This Lawsuit.

Plaintiff claims he intended to return to Peet's Coffee's SoMA coffee shop when he filed this lawsuit. *See* Plaintiff's Complaint ¶ 20 ("Plaintiff will return to Peet's Coffee to avail himself of its goods or services and to determine compliance with the disability access laws once it is represented to him that Peet's Coffee and its facilities are accessible."); Declaration of Plaintiff in Opposition to Defendant's Motion to Dismiss, ¶ 6 (Dkt. 14-1) ("I intend to return to the Peet's Coffee at 625 8th St., San Francisco, California, once I've been assured that Defendant intends to welcome the disabled by making their coffee shop accessible, rather than refusing to accommodate disabled customers."); Plaintiff's Opposition to Defendant's Motion to Dismiss at pp. 3-4, 15 (Dkt. No. 14); Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss at pp. 3-4 (Dkt. No. 26).

Defendant contends this was a lie, and the Court should make a finding that this was a lie for the following independent reasons:

First, this Court already found there is little doubt that Plaintiff lied about intending to return to Peet's Coffee's SoMA Coffee Shop. *See* June 22, 2002 Order Granting Motion to Dismiss (Dkt. No. 48) ("there is little doubt that Whitaker had no intention of returning to the shop when he filed his lawsuit, and there is good reason to think that he lied under oath about this issue (and perhaps others) at the evidentiary hearing"). The Court accordingly joins Judges Alsup, Corley, Rogers, and others who reached the same credibility conclusion about Plaintiff's intent to return. *See* June 27, 2022 Order Granting Motion to Dismiss at 2, *Whitaker v. Salah R. Salah*, No. 4:21-cv-09548-YGR (June 27, 2022) (Rogers, J.) (finding, among other things, "[a]t the hearing held on June 16, 2022, there was no dispute that Whitaker had previously admitted to having no plan to support his return to the thousands of establishments that he has sued to date" and his own layers even "conceded that Whitaker's plan was previously insufficient") (attached as Exhibit A to Declaration of M. Brett Burns in Support of Defendant's Reply in Further Support of its Motion for Attorney's Fees and Sanctions) (Dkt. No. 60-1);[10] *Whitaker v. Slainte Bars LLC*, 2022 WL 1426979, at *4 (Corley, J.)

---

[10] Whether Plaintiff even had a "plan" to return to the hundreds of businesses he had sued at this time is extremely questionable. At trial in *Whitaker v. Pachanga* on December 2, 2021, two months

DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

(finding that Plaintiff produced no evidence of any "specific connection to Redwood City, any specific plan to return to Redwood City, or any specific reason to return to [the defendant's restaurant] in Redwood City");[11] *Whitaker v. Peet's Coffee, Inc.*, No. C 21-07055 WHA, 2022 WL 976978, at *2 (N.D. Cal. Mar. 31, 2022) ("plaintiff has not alleged or stated any specific connection

---

after he sued Peet's Coffee, Plaintiff testified that he had just developed a plan to revisit all of the businesses he had sued and settled with by reaching out to Potter Handy and requesting that they put together a list for him. *See* Evidentiary Transcript in *Whitaker v. Pachanga Mexican Grill*, No. 20STLC03367 (Los Angeles Superior Court (December 2, 2021) at 166:10-27 (attached hereto as Exhibit C to RJN) On December 2, 2021, Plaintiff was pressed about the details of his plan to revisit and testified that it would probably take him *two years* to revisit each of them. *Id.* at 167:1-12. After being informed that his proposed plan would mean he would have to visit four businesses per day for two years, Plaintiff testified: "*Sir, I couldn't sit here and give you the details right now because the plan is not put together. I gave you a speculation of what I think I could do in two years, but once I have some time to sit down and really formulate a plan, I could give you more in depth detail on the plan.*" *Id.* at 167:21-26; *see also* 168:6-17 ("*I would have to put the plan together. I don't know if that's what I would do a day four a day. I don't know, but, I mean, one thing I can tell you is I'm having the firm put the list together[…]*").

[11] Quoting Judge Corley,

> To the extent Mr. Whitaker contends that having an intent to live in the Bay Area is sufficient to establish a genuine intent to return, the Court disagrees. He cites no case to support such a proposition, and the caselaw is to the contrary. "[W]here, as here, the public accommodation being sued is far from the plaintiff's home" the Ninth Circuit has "found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) (finding that the Sacramento plaintiff adequately alleged an intent to return and stay at a Santa Barbara hotel where she offered evidence that she visited Santa Barbara one to three times a year, had three specific trips planned for that year, and had specific reasons related to the "hotel's style, price, and location" for wanting to stay at that particular hotel); *see also Doran v. 7-Eleven, Inc.*, 524 F. 3d 1034 (9th Cir. 2008) (finding that the plaintiff established that he was deterred from returning to a 7-Eleven that was 550 miles from his home given his allegations that he had visited the 7-Eleven 10-20 times in the past, the 7-Eleven was located near his favorite restaurant in the area, and he intended to go to the area during his annual Disneyland trips); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1035 (9th Cir. 2002) (finding that the plaintiff adequately alleged that he was deterred from visiting a grocery store located 70 miles from his home where he stated in his declaration that it was his favorite grocery store and that he visited the area every week to see his grandmother). Here, in contrast, Mr. Whitaker did not testify as to any specific connection to Redwood City, any specific plan to return to Redwood City, or any specific reason to return to the Alhambra Irish House in Redwood City.

*Whitaker v. Slainte Bars LLC*, 2022 WL 1426979, at *4.. The same analysis applies in this case.

DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

to Burlingame, any specific plan to return to Burlingame, or any specific reason to return to Peet's Coffee in Burlingame"); *see also Whitaker v. Lonely Planet LLC*, No. C 21-03365 WHA, 2022 WL 3084316, at *4 (N.D. Cal. Aug. 3, 2022) (Alsup, J.) ("plaintiff has alleged no specific connection to Oakland, no specific plan to return to Oakland, no specific connection to our restaurant, no specific plan to return to our restaurant, [and] Plaintiff's conclusory statement is insufficient to confer standing."); *Whitaker v. Chanel, Inc.*, No. 21-CV-09330, 2022 WL 1122645, at *4 (N.D. Cal. Apr. 14, 2022) (Van Keulen, Mag. J.) ("Plaintiff's geographic distance and lack of concrete plans to return to the Store or even the general vicinity prevent the Court from inferring that he intends to return to the Store."); Complaint in *People v. Potter & Handy LLP*, ¶ 6 ("Indeed, Potter Handy's Serial Filers frequently do not personally encounter barriers themselves (often conducting cursory "drive-bys" or having helpers or investigators go to businesses in their place) and they almost never return to the businesses they sue after the cases resolve.").

Second, Plaintiff admittedly had no plan to return until after months after he filed suit and the District Attorneys of San Francisco and Los Angeles sued his law firm. *See* Pl's Depo. 70:8-12, 71:12-24, 71:16-24. Even when he was deposed, Plaintiff could not provide details about the new plan. Pl's Depo. 71:16-24.

Third, at the recent evidentiary hearing, while responding to the Court's point about attorneys having ongoing obligations to avoid pursuing lawsuits when a client is lying, Plaintiff's Counsel argued he did not believe Plaintiff was lying about intending to return to Peet's Coffee, in part because "[Plaintiff] hadn't been filing that many cases in the Bay Area when this case was filed." That's not true, either. The present case was filed on September 30, 2021. *See* Plaintiff's Complaint (Dkt. No. 1). According to PACER records, Plaintiff started filing lawsuits in the Northern District of California in October 2019 and had filed more than 395 lawsuits in the Northern District of California by the date the present lawsuit was filed. There is still no competent evidence Plaintiff has returned to any of these 395 businesses since suing and settling with them.

Fourth, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about intending to return to visit the Peet's Coffee San Francisco SoMA coffee shop when he filed this lawsuit.

DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS

**F.  Plaintiff Lied About Being Deterred From Returning to the Peet's Coffee in SoMA.**

Plaintiff claims he was deterred from purchasing the hot chocolate drink he allegedly "considered" while passing by the Peet's Coffee SoMA coffee shop, claiming he needed to use a table to consume his drink due to alleged lack of finger dexterity, and claiming he concluded he could not use the "pedestal-style" outdoor patio tables he saw from the sidewalk.

Defendant contends this was a lie, and the Court should make a finding that this was a lie for the following independent reasons:

First, Plaintiff claims he lacked any finger dexterity (Hearing Tr. 23:1-11), but Defendant disproved this claim with his own music videos, which show him counting money, drinking from shot glasses, holding cigarettes, and playing with drum sticks. Burns Decl. ISO Motion for Attorney's Fees or Sanctions, ¶ 5 (Ex. C) (Dkt. No. 60-1).

Second, Plaintiff claims he could not use a pedestal-style patio table, but Defendant disproved this claim with a photo of him and his counsel sitting with coffee drinks and water at a pedestal-style patio table at Starbucks. Burns Decl. ISO Motion for Attorney's Fees or Sanctions, ¶ 4 (Ex. C).

Third, Defendant contends that Plaintiff could have been accommodated with an accessible table had he merely asked Peet's Coffee if one was available, and since he did not, he cannot claim he was deterred. As another federal court recently observed:

> *Even assuming that Plaintiff's otherwise unsupported statement that his wheelchair could not fit under the pedestal style tables is sufficient to raise a dispute whether they were inaccessible, there is uncontroverted evidence that Plaintiff could have been accommodated at the Restaurant on the day he passed by. Defendants provide unrebutted testimony that Restaurant workers would have been able to bring a different, undeniably accessible table outside if Plaintiff had requested a more accessible table. Plaintiff's only counter to this evidence is to argue that he is not required to "create his own accommodation." But the argument is not that Plaintiff has to "create" an accommodation. It is uncontroverted that the Restaurant had accessible tables. The tables may not have been in the location that Plaintiff wanted them to be, but it is uncontroverted that Defendants would have been able to relocate an appropriate table in a short amount of time. Defendants are not trying to impose any burden on Plaintiff to "create" anything – he only needed to ask if an accommodation was already available at the Restaurant. It is not at all unusual for customers without disabilities to ask for tables to be moved, for example, if they are with a large party and two or more tables need to be pushed together to accommodate the size of the group. If Garcia had asked, the uncontroverted evidence is that he too would have been accommodated.*

See *Garcia v. Harnsberger*, No. CV-20-9886-DSF (GJSx), 2022 WL 266184, at *2 (C.D. Cal. Jan.

25, 2022), *appeal dismissed*, No. 22-55115, 2022 WL 2986782 (9th Cir. May 12, 2022).[12]

Fourth, the sheer amount of lies and misconduct by Plaintiff support a factual finding that Plaintiff more likely than not lied about being deterred from returning to the Peet's Coffee San Francisco SoMA coffee shop on September 2, 2021.

**G.  Plaintiff Lied Repeatedly In His Written Discovery Responses And Continues To Violate A Court Order Directing Him To Produce Documents.**

Plaintiff's repeated lies are detailed in Defendant's June 1, 2022 Discovery Letter (Dkt. No. 42) and Defendant's Notice of Compliance with Court's August 18, 2022 Order (Dkt. No. 74, Attachment 2), filed previously. These filings identify in detail Plaintiff's numerous lies in written discovery responses served in this case, as well as Plaintiff's continued violation of the Court's May 31, 2022 Order to produce responsive documents, which Plaintiff has still failed to do. Defendant maintains that it is entitled to separate sanctions and fees due to Plaintiff's discovery misconduct, which Plaintiff's Counsel argues against merely by blaming lower-level associates and by arguing that the eleventh-hour filing of a "notice of mootness" thirty minutes before the May 31, 2022 evidentiary hearing somehow terminated the Court's jurisdiction, neither of which is correct, and neither of which excuses the sanctionable misconduct by Plaintiff and Plaintiff's Counsel.

### III. CONCLUSION

For all of these reasons, and the reasons discussed in Defendant's prior motion for sanctions and discovery dispute filings, Defendant suggests the evidence that Plaintiff repeatedly lied in this lawsuit is overwhelming, asks the Court to exercise its discretion to make factual findings that Plaintiff lied, award non-monetary sanctions and monetary sanctions as it deems fair and reasonable

---

[12] This analysis is also relevant to the discussion at the recent hearing on Defendant's motion for sanctions in which the Court asked Defendant if a plaintiff is required to ask a defendant whether an accessible patio table is available and could be relocated to a specific area before concluding he has been subjected to discrimination and he is therefore deterred. Defendant respectfully suggests the answer is "at least sometimes." Perhaps there are situations where, for example, the only entrance to a place of public accommodation is not accessible, or the door to the only toilet stall is too narrow, or a restaurant has no accessible tables whatsoever, thus asking would have been a futile gesture. But where, as here, accessible tables undisputedly were provided for disabled customers and could have been provided at any location (inside or outside upon request), Defendant respectfully suggests that this was one of those times where merely asking was required before jumping to the conclusion that discrimination and deterrence had occurred.

due to Plaintiff's misconduct, and asks that the monetary sanctions be assessed jointly and severally against Plaintiff and Plaintiff's Counsel.

DATED: August 22, 2022

HUNTON ANDREWS KURTH LLP

By: /s/ *M. Brett Burns*
M. BRETT BURNS
Attorneys for Defendant
PEET'S COFFEE, INC.