UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>                Plaintiff,<br><br>        v.<br><br>PEET'S COFFEE, INC.,<br><br>                Defendant. | Case No.  21-cv-07698-VC<br><br>**ORDER RE MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 51 |

The motion for attorney's fees and sanctions is granted in part and denied in part.

I.

Brian Whitaker alleges that he visited Peet's Coffee in the SoMa neighborhood of San Francisco in September 2021 "to avail himself of its goods or services motivated in part to determine if the defendants comply with the disability access laws." Complaint ¶ 8, Dkt. No. 1. Whitaker is quadriplegic and uses a wheelchair for mobility. During his visit, he allegedly saw that Peet's had failed to provide wheelchair accessible outdoor dining tables. *Id.* at ¶¶ 10–14. Based on this alleged violation, Whitaker filed a lawsuit against Peet's under the Americans with Disabilities Act and California's Unruh Act.[1]

To have Article III standing for injunctive relief—the only form of relief available under the ADA—a plaintiff cannot simply point to "past exposure to illegal conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). The plaintiff must show "continuing, present adverse effects" stemming from that

---

[1] California's Unruh Act is "coextensive with the ADA," except it allows for actual and statutory damages. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

conduct. *Id.* In the Ninth Circuit, an ADA plaintiff can meet this requirement by showing that they are deterred from visiting a public accommodation because of knowledge of its ADA noncompliance. *See, e.g.*, *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1101 (9th Cir. 2017). In those circumstances, the plaintiff's injury is ongoing—establishing standing—because they would like to return to the accommodation but cannot. *See id.* Consistent with this requirement, Whitaker alleged that he intended to return to Peet's once its ADA violation was remediated. *See* Complaint ¶ 20 ("Plaintiff will return to Peet's Coffee to avail himself of its goods or services and to determine compliance with the disability access laws once it is represented to him that Peet's Coffee and its facilities are accessible.").

Peet's moved to dismiss the complaint, arguing that Whitaker lacked standing in part because he had not adequately alleged this intent to return. Dkt. No. 12. In response, Whitaker filed a declaration stating that he "intend[s] to return to the Peet's Coffee at 625 8th St., San Francisco, California, once [he's] assured that Defendant intends to welcome the disabled by making their coffee shop accessible, rather than refusing to accommodate disabled customers." Dkt. No. 14-1 at 2.[2] He also said that he visited San Francisco because he was "considering moving to Northern California," and that he visited Peet's specifically because he likes their hot chocolate. *Id.* at 1–2.

The Court denied Peet's motion to dismiss. Dkt. No. 19. The Court explained: "Defendants may raise two kinds of jurisdictional challenges: A facial attack contends that the complaint fails, on its face, to adequately allege jurisdiction, while a factual attack 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'" *Whitaker v. Peet's Coffee, Inc.*, No. 21-CV-07698, 2022 WL 278664, at *1 (N.D. Cal. Jan. 31, 2022) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). The Court rejected Peet's "facial" attack, holding that the complaint adequately alleged jurisdiction. *Id.* It

---

[2] All pages cited reference the pages as numbered by ECF.

then determined that there was "inadequate factual development . . . to adjudicate a factual challenge." *Id.* The Court then allowed Peet's to engage in three months of jurisdictional discovery to develop this factual challenge and later scheduled an evidentiary hearing to consider the evidence adduced in discovery. *See* Dkt. Nos. 23, 33.

During discovery, Peet's deposed Whitaker. In his deposition, Whitaker said that he flew to San Francisco for the September visit, though he could not recall the airport he departed from or the airport he flew to. Dkt. No. 24-2 at 10. He again said he was visiting San Francisco in connection with his plans to move to Northern California, and he said he had done some online research about areas in and around San Francisco. *Id.* at 59–60, 67. As of the deposition, however, Whitaker had not met with any real estate agents about the move, and he had not visited any rental properties in San Francisco or the Bay Area. *Id.* at 59–60. Instead, during his one-day trip, Whitaker visited at least 30 restaurants and stores. *Id.* at 22–51. These visits resulted in 34 ADA lawsuits. *See* Dkt. No. 24 at 14–16. And Whitaker did not end up moving to San Francisco: within a month of the trip, he signed a one-year lease for an apartment in Los Angeles. *Id.* at 5.

When asked about his visit to Peet's specifically, Whitaker said the outdoor tables were inaccessible, and he decided not to patronize Peet's after seeing this. *Id.* at 15. He did not enter Peet's, and he did not speak with anyone who worked there. *Id.* at 17. He said he took photos of the tables before leaving. *Id.* at 15. Following the deposition, Peet's filed a renewed motion to dismiss for lack of standing. Dkt. No. 24. Peet's also argued that the ADA claim was moot because the accessibility issue alleged by Whitaker had been addressed. *Id.* at 17–18.

After the Court scheduled the evidentiary hearing and allowed for additional discovery, Peet's requested documents related to Whitaker's trip, including his flight information, receipts for his rental car, receipts for the purchases referenced in his deposition, and the photographs of Peet's that Whitaker said he had taken. *See* Dkt. No. 42. Whitaker did not produce anything by the discovery deadline. *Id.* at 1. Peet's then followed up with Whitaker's counsel at the Potter Handy firm asking for the documents. *See* Dkt. No. 74-2 at 2, 15. Whitaker's counsel said she

would produce the documents by May 30, prior to the May 31 evidentiary hearing on jurisdiction. *Id.* at 17–18.

By May 31, the day of the evidentiary hearing, Whitaker still had not produced anything. *Id.* at 2. Thirteen minutes before the hearing was scheduled to begin, Whitaker's counsel filed a "Notice of Mootness," suggesting that Peet's had fixed the ADA violation, mooting his ADA claim. Dkt. No. 38. Whitaker then asked the Court to dismiss his Unruh Act claim. *Id.*

Given the lack of notice—and the live claim for damages under the Unruh Act—the Court went forward with the evidentiary hearing, and it ordered Whitaker to respond to the discovery requests by June 1. *See* Dkt. No. 39.

At the evidentiary hearing, Whitaker again testified that he visited San Francisco because he was considering moving there. Dkt. No. 44 at 19. He also testified that, five weeks after his visit to San Francisco, he signed a one-year lease for an apartment in Brentwood, Los Angeles. *Id.* at 52–53. Whitaker then said he was also in San Francisco as part of his advocacy as an ADA tester. *Id.* at 19–20. He did not recall discussing his advocacy during his deposition, and he did not mention it in his declaration filed in opposition to the first motion to dismiss. *Id.* at 20; Dkt. No. 14-1.

When asked about his intent to return, Whitaker was inconsistent. He said, "I can't say that I have a plan to return to each of the 1,800 businesses that I have sued," but "going forward" he would revisit them. Dkt. No. 44 at 43–44. He then acknowledged that he "might not be able to revisit" them. *Id.* at 46. But, he explained, he had since developed a system for returning to the businesses—though he had no such system in place at the time of filing. *Id.* With this new system, he said, he would return to the businesses once he was "alerted" that the time had "passed for remediation." *Id.*

After the evidentiary hearing, Whitaker and Potter Handy purported to respond to Peet's discovery requests. Dkt. No. 42-1. Potter Handy asserted that, after "a diligent search and a reasonable inquiry," Whitaker did not have any flight information or air travel receipts showing that he made the trip to San Francisco. *Id.* at 3. He did not have any documentation of or receipts

for the rental car he said he used on the trip. *Id.* at 4. And he did not have any documentation or receipts for the purchases he made during the trip. *Id.* In all, Whitaker produced four photographs he claimed to have taken on September 2 and nine photographs taken by someone named Robert Marquis on September 14. *Id.* at 5.

That day, Peet's filed a letter brief arguing that these responses were "materially deficient." Dkt. No. 42 at 1. In response, Potter Handy argued that the Court's "jurisdiction ended" because the ADA claim was moot. Dkt. No. 45 at 1. Potter Handy made this argument even though the Court had not dismissed the Unruh Act claim. Potter Handy then argued that the documents were not relevant and proportional to the needs of the case. *Id.*

On June 9—after the deadline for Peet's to file its post-evidentiary hearing brief—Whitaker served supplemental discovery responses, producing a receipt of a $500 payment to someone named Tyrus Payne in connection with "security" for the trip and a receipt for Whitaker and Payne's return flight. Dkt. No. 74-2 at 4, 35–36. Whitaker did not produce any documentation of the flight to San Francisco, any documentation of his rental car, or any documentation of the purchases he made during the trip. *See id.*

The Court ultimately granted Peet's renewed motion to dismiss, holding that the ADA claim was moot and declining to exercise supplemental jurisdiction over the Unruh Act claim. Dkt. No. 48. This motion followed.

II.

Peet's first seeks an award of fees under the ADA. The ADA allows courts to award fees to prevailing defendants in certain circumstances. *See Rutherford v. Evans Hotels, LLC*, No. 18-CV-435, 2021 WL 1945729, at *1 (S.D. Cal. May 14, 2021) (citing *Brown v. Lucky Stores*, 246 F.3d 1182, 1190 (9th Cir. 2001)). While courts have occasionally awarded fees to defendants after dismissing a case as moot, those cases are distinguishable. *See, e.g.*, *E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 152 (4th Cir. 2014) (upholding award of attorney's fees where case was "effectively . . . moot at its inception"); *B.E. Technology, L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 679 (Fed. Cir. 2019) (upholding award of attorney's fees in patent infringement case after

Facebook sought inter partes review of the at-issue patent, the Patent Trial and Appeal Board invalidated the patent, and the case was then dismissed as moot). Here, the case became moot after Peet's remediated the alleged ADA violation. As such, Peet's does not qualify as a prevailing party, so its request for fees under the ADA is denied. *Cf. CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016).

### III.

In the alternative, Peet's seeks sanctions against Whitaker and Potter Handy. Under 18 U.S.C. § 1927, any attorney who "unreasonably and vexatiously" multiplies court proceedings may be required to pay "excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The sanctions only apply to "subsequent filing[s] and tactics which multiply the proceedings," not the filing of the initial complaint. *Rutherford*, 2021 WL 1945729, at *2 (quoting *Moore v. Keegan Management Co.*, 78 F.3d 431, 435 (9th Cir. 1996)). "To award sanctions under section 1927, the court must make a finding of recklessness or bad faith." *Id.* Under its inherent powers, the Court may also award sanctions "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975)).

The Court finds by clear and convincing evidence that Whitaker and Potter Handy engaged in concerted, bad-faith sanctionable conduct once Peet's sought dismissal of the ADA claim on standing grounds. First, Whitaker and Potter Handy lied to the Court about Whitaker's intent to return to the Peet's location in SoMa once the alleged barriers were remediated, knowing that this intent was relevant to the Court's inquiry into standing. Second, Whitaker and Potter Handy acted in bad faith by failing to comply with their discovery obligations and seeking to evade the evidentiary hearing.

### A.

It is clear that Whitaker had no intent to return to this Peet's location at the time he filed the complaint. Once they were pushed on this allegation, Whitaker and Potter Handy should have

6

withdrawn their ADA claim, but they chose to double down on their lie instead.

As Whitaker explained at the evidentiary hearing, he has sued more than 1,800 businesses, he has no specific plans to return to those businesses, and it might be impossible to do so. At the time of the evidentiary hearing, he said he had developed a system for returning—but that he had no such system in place at the time he filed this complaint. With these comments, Whitaker all but conceded he had no intent to return to the Peet's location at the time he filed his lawsuit. But speaking out of the other side of his mouth, Whitaker clung to the assertion that he had such an intent, even though it is clearly unrealistic to remember, much less return to, 1,800-plus businesses—at least without a detailed plan and a serious commitment, which Whitaker lacked at the time of filing.

Whitaker's shifting justifications for his trip provide further reason to conclude that he was lying about his intent to return, and that he and his law firm acted in bad faith when litigating this issue. Although the complaint obliquely suggests that Whitaker visited Peet's as an ADA tester, he and his lawyers dropped this justification when Peet's moved to dismiss, changing their story in an apparent attempt to make Whitaker's allegations about his intent to return seem more credible. In his declaration and at his deposition, Whitaker did not discuss his work as an ADA tester but instead said he visited Peet's because he was considering moving to Northern California.[3] These statements were not credible: He admitted that he did not tour any apartments, meet with real estate agents, or visit any open houses. Whitaker also admitted that, just five weeks after this visit to San Francisco, he signed a lease for a Los Angeles apartment. Instead of researching the move he alleged he was contemplating, Whitaker visited (or claims to have visited) 34 restaurants and shops—resulting in 34 ADA lawsuits. Then, at the evidentiary

---

[3] At the hearing on this motion, Whitaker's counsel Dennis Price suggested that Whitaker did admit to being a tester during his deposition when he said he was "canvassing" the neighborhood. Read in context, however, Whitaker's statements about "canvassing" are not a reference to his tester status. *See, e.g.*, Dkt. No. 24-2 at 8 (Q: "Mr. Whitaker, when you say canvassing the area, my question is canvassing the area for what purpose?" A: "Just become [sic] familiar with the area as a potential place that I might want to stay or just learning the area, period. Because of my intent to move to Northern California, I want to become as familiar as I can with the areas.").

7

hearing, Whitaker changed his testimony again: He said he was in San Francisco in connection with a potential move *and* to serve as an ADA tester.

All this conduct regarding Whitaker's alleged intent to return forced Peet's and the Court to expend resources that never should have been expended. Peet's prepared for and conducted a deposition, where Whitaker said one thing. Peet's then prepared for and appeared at the evidentiary hearing, where Whitaker said another. Peet's also filed several rounds of briefing on Whitaker's intent to return. The Court, too, had to address the parties' briefing and ultimately conduct an evidentiary hearing to determine whether it could credit Whitaker's statements. Whitaker and Potter Handy should have dropped the ADA claim the moment Peet's pressed them on Whitaker's intent to return, but instead they multiplied the proceedings vexatiously and in bad faith, with Whitaker lying repeatedly and Potter Handy instigating (or at a minimum knowingly perpetuating) those lies.

To be clear, the Court is not sanctioning Whitaker because he is an ADA tester, nor is it sanctioning Potter Handy because it represents a tester. Peet's briefing seems to speak of testers like Whitaker in disparaging terms, but courts have long made clear that there's nothing wrong with visiting a business to see whether it complies with disabilities law, and there's nothing wrong with filing a lawsuit against a business that's out of compliance. Even if a plaintiff like Whitaker is motivated primarily by financial gain (as Peet's repeatedly suggests), that is not a reason to disparage him and certainly not a reason to sanction him.

But when you sue as a tester (or when you represent a tester) you must conduct yourself in legitimate fashion. You must make truthful allegations. You may not lie in an effort to keep your lawsuit alive. And that is the real problem here. What's apparent from the sequence of events in this case—and what became even clearer from Whitaker's testimony and demeanor during the evidentiary hearing—is that Whitaker and his lawyers feel so strongly about their mission (whether it's a mission to get businesses in compliance, a mission to make money, or both) that they were willing to peddle whatever lie they thought necessary to allow their lawsuit to survive. They repeatedly lied about Whitaker's intent to return to the Peet's location once it

achieved compliance. And they sought to lend credibility to this facially preposterous allegation by peddling another lie: that the purpose of Whitaker's trip was to explore moving to the San Francisco area.

B.

Whitaker and Potter Handy analogize this case to *D'Lil v. Best Western Encina Lodge & Suites* to suggest that this credibility determination is inappropriate as a matter of law. 538 F.3d 1031 (9th Cir. 2008). In *D'Lil*, the plaintiff brought an ADA claim against a Best Western in Santa Barbara. *Id.* at 1034. To establish her intent to return, the plaintiff presented evidence that "she regularly visited Santa Barbara both before and after she filed the complaint," and she specifically explained why she wanted to return to the Best Western once it was remediated. *Id.* at 1038–39. Notwithstanding this evidence, the district court held that the plaintiff lacked standing, and it suggested that her intent to return was not credible. *Id.* at 1038. The district court noted that the plaintiff had not returned to six hotels she sued during another trip to Redding, California, and "found it implausible that a plaintiff with approximately sixty prior ADA suits sincerely intends to return to nearly every place she sues." *Id.* at 1040.

The Ninth Circuit rejected this credibility determination as a matter of law. The court warned, "[W]e must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation." *Id.* The court noted that there was no evidence in the record about whether the other six hotels had been made accessible. *Id.* Furthermore, the court explained, whether the plaintiff returned to the hotels in Redding was irrelevant to her desire to return to Santa Barbara, given the specific reasons she identified for wanting to return. *Id.* "[B]ecause the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina," the Ninth Circuit rejected the adverse credibility determination. *Id.*

This case is very different. In *D'Lil*, the district court thought it was generally implausible that the plaintiff would return to all the places she had sued given her litigation history. Here, in contrast, the Court is not relying on Whitaker's past litigation, but on his own conduct and

9

statements as they relate to this case. His statements about his plans to move and the purpose of his trip to San Francisco were clearly lies based on his activities during the one-day trip, his lack of preparation for the move, and the short time period between the trip and his decision to sign a lease in Los Angeles. Likewise, his statements about his intent to return were clearly lies based on his admission that he had no specific plans for returning to the businesses he'd sued at the time this case was filed, that it might be impossible to do so, and that he only subsequently developed a system for returning to the targets of his lawsuits (after widespread scrutiny of his boilerplate allegations about his intent to return in so many ADA access suits). In finding that Whitaker and Potter Handy lied, the Court is relying on Whitaker's statements and Potter Handy's filings in this case, not on their ADA litigation history more generally.

C.

As discussed in Section I, Whitaker and Potter Handy failed to timely respond to Peet's discovery requests. Then, they failed to respond by their own self-imposed deadline, which was just one day before the evidentiary hearing. When they finally responded after the evidentiary hearing (and after stern warnings by the Court), their responses were grossly deficient. This discovery misconduct by Whitaker and Potter Handy provides an additional reason for sanctions. The misconduct is independently sanctionable, but it also bolsters the overall conclusion that Whitaker and Potter Handy have acted in bad faith in this litigation.

Potter Handy now argues that the discovery dispute was the result of "an attorney simply not following through" on her duties. Dkt. No. 55-1 at 2. Potter Handy attorney Dennis Price states: "A[s] soon as this failure was brought to the attention of [the attorney's] supervisor's [sic] corrective actions were taken to ensure that the matter was being covered." *Id.* Potter Handy's contemporary response to the dispute tells a different story. At the evidentiary hearing, Price made no mention of the "corrective actions" Potter Handy had taken to remedy the sole attorney's failing. *See* Dkt. No. 44 at 9–10. In response to Peet's motion to compel discovery, Potter Handy told the Court (frivolously) that its "jurisdiction ended." Dkt. No. 45 at 1. And the alleged "corrective actions" were nothing of the sort—the post-hearing discovery responses were

just as sanctionable as the pre-hearing ones because they falsely asserted that Whitaker and Potter Handy had made a diligent but unsuccessful effort to collect documents that are easily attainable.

Of course, regardless of Whitaker and his counsel's personal views on the Court's jurisdiction, Whitaker and Potter Handy were under a court order to comply with discovery. And even if the ADA claim was moot at that point, the Court still had jurisdiction over Whitaker's Unruh Act claim. Given Whitaker and Potter Handy's failure to meaningfully respond to discovery, there were serious doubts at that point that Whitaker had visited San Francisco at all.

Whitaker and Potter Handy's deficient discovery responses and their shifting justifications for their failures further support a finding of bad faith. The failure to comply with discovery robbed Peet's of the opportunity to question Whitaker about the documentation supporting his visit at the evidentiary hearing. Peet's was also unable to rely on the missing documentation in drafting its supplemental brief following that hearing.

This conduct also multiplied the proceedings: Peet's had to hound Potter Handy before it received any response, and then Peet's had to file a brief with the Court when Potter Handy failed to comply with the Court's order. Potter Handy's frivolous legal argument that it need not comply with discovery because the ADA claim was moot wasted more Court time.

Whitaker and Potter Handy's eleventh hour filing of the notice of mootness provides further evidence of their bad faith. As early as March 23, 2022, Peet's asserted that the ADA claim was moot because the violation had been remediated. Dkt. No. 24 at 17–18. Yet Whitaker and Potter Handy resisted dismissing the case on those grounds—up until minutes before the evidentiary hearing. Dkt. No. 26 at 19–20. This unreasonable delay forced Peet's and the Court to prepare for an evidentiary hearing that presumably could have been avoided. More importantly, the eleventh hour filing of the notice of mootness suggests that Whitaker and Potter Handy were attempting to evade scrutiny of Whitaker's lies.

IV.

To be fair, Peet's is not entirely blameless in this case. As noted, Peet's often complains

11

about Whitaker's status as a tester, which is not appropriate. Moreover, on this record, it seems that Peet's had actually violated the ADA and only fixed that violation because of this lawsuit.

Whitaker and Potter Handy, however, engaged in an egregious pattern of bad faith misconduct that warrants sanctions. Knowing that Whitaker's allegations about his intent to return were facially incredible, Whitaker and Potter Handy conspired to lie to the Court about plans to move to San Francisco, and about how the trip to San Francisco was in furtherance of those plans. To minimize the damage from these lies, Whitaker and Potter Handy tried to evade the Court's evidentiary hearing. Then, Whitaker and Potter Handy failed to comply with their basic discovery obligations and willfully disobeyed the Court's order to do so.

An award of $35,000 in sanctions is warranted.[4] This represents a portion of the attorney's fees and costs reasonably incurred after Peet's moved to dismiss.[5] Potter Handy and Whitaker are jointly and severally liable for the award based on their concerted misconduct. They must compensate Peet's in this amount within 21 days of this order.

**IT IS SO ORDERED.**

Dated: October 11, 2022

VINCE CHHABRIA
United States District Judge

---

[4] The sanctions against Potter Handy are imposed under a combination of § 1927 and the Court's inherent powers. Because § 1927 applies only to attorneys, the sanctions against Whitaker are imposed solely under the Court's inherent powers.

[5] Based on Peet's billing records, it appears that Peet's incurred substantially more attorney's fees after filing the motion to dismiss. Peet's has not requested that full amount, and the award of $35,000 compensates Peet's for attorney's fees reasonably incurred in this case.